Whaley, Chief Justice,
delivered the opinion of the court:
This is a suit by the surety of a prime contractor to recover the retained percentages earned by the contractor during its performance of the work and before the work was taken over by the surety and completed after default on the part of the prime contractor.
The facts show that on November 19,1932, the Construction Materials Corporation entered into a contract with the United States to furnish all labor and materials and perform all work required for the deepening of Ballards Eeef Channel, Detroit River, and for the construction of a compensating dike by the use of ledge rock removed from the channel, in accordance with specifications, schedules, and drawings accompanying the contract, for a certain unit price per cubic yard, place measurement. It was estimated that the cost of all work performed under the contract would be approximately $980,167.
The United States Fidelity & Guaranty Company, the plaintiff in this suit, became the surety on the bond for the faithful performance of all work covered by the contract in the penalty sum of $490,084. On January 17,1934, the Construction Materials Corporation was adjudicated a bankrupt and the duly appointed trustees of the bankrupt corporation notified the Chief of Engineers of the United States Army by letter dated March 8, 1934, that they were unable, due to lack of funds, to complete the contract.
On March 13, 1934, the War Department terminated the contractor’s right to proceed and on the same day notified *151 the surety for the contractor that under Article 9 of the contract the contractor’s right to proceed had been terminated because of the default in the performance of the work. The surety was notified that it had ten days within which to decide whether it would take over and complete the work or, if it elected not to do so, the Government would complete the contract and charge the excess to the surety and the principal. Plaintiff elected to complete the work and entered into a contract with the Merritt-Chapman and Whitney Corporation to perform the work under the original contract for $150,000, in addition to turning over all progress payments with retained percentages thereafter earned, and all progress payments and retained percentages earned prior thereto or unpaid, upon completion and acceptance of the work.
On March 16, 1934, plaintiff notified the defendant formally in writing that it elected to complete the contract and had entered into a contract with the Merritt-Chapman and Whitney Corporation, and requested that a supplemental agreement be entered into stipulating that all moneys earned and to be earned on the said contract be paid to it.
On April 16, 1934, a supplemental agreement was entered into by the defendant whereby it agreed that the United States Fidelity and Guaranty Company should complete the work under the original contract; that payments as authorized in the contract should be made direct to it for work performed thereunder; and that any amounts retained from payments made to the Construction Materials Corporation should be paid to the surety after deducting the amount of any damages suffered by the United States.
During the period the Construction Materials Corporation performed the work under the contract, the Government had retained ten percent of the amount earned and had in its possession when the contract was taken over by the plaintiff the sum of $13,269.46.
The contract was completed and was accepted by the defendant on or about June 12,1936. After certain payments and deductions, which are admitted to be correct, there now remains in the hands of the defendant the sum of $9,197.69 *152 in retained percentages. The defendant declined to pay this amount because of the fact it claimed the Construction Materials Corporation was indebted to it in a much larger sum under two other contracts. On neither of these contracts was the plaintiff surety. On both of these contracts another company was surety. The amount found due under these contracts by the District Court of Delaware has been compromised and settled. The amount of the retained percentages above set forth is still in the hands of the United States and was not included in the compromise settlement made under the other two contracts between the contractor, the surety, and the United States. Under the supplemental agreement it is too plain for argument that the plaintiff is entitled to recover this amount. The defendant agreed, as part of the consideration for the undertaking by the surety to complete the contract, to turn over to plaintiff all the retained percentages of the prime contractor which at that time were held by it.
There is also a clear right to this sum by reason of the fact that the surety on the bond of the prime contractor under the doctrine of subrogation is entitled to all equities of the principal and also those of the creditor (The United States). This right of the surety to be subrogated to all the rights of its principal and its creditor goes back to the time the contract for the performance of the work was entered into and not to the date of the default on the part of the contractor.
In the case of Prairie State National Bank v. The United States, 27 C. Cls. 185, affirmed 164 U. S. 227, 232, the Supreme Court held:
A great deal of confusion has arisen in the case by treating Hitchcock as subrogated merely “in the rights of Sundberg & Co.,” in the fund, which, in effect, was saying that he was subrogated to no rights whatever. Hitchcock’s right of subrogation, when it became capable of enforcement, was a right to resort to the securities and remedies which the creditor (the United States) was capable of asserting against its debtor, Sundberg & Company, had the security not satisfied the obligation of the contractors, and one of such remedies was the right based upon the original contract to appropriate the 10 percent retained in its hands. If the United States had *153 been compelled to complete the work, its right to forfeit the ten percent and apply the accumulations in reduction of the damage sustained, remained. The right of Hitchcock to subrogation, therefore, would clearly entitle him when, as surety, he fulfilled the obligation of Sundberg & Company, to the government, to be substituted to the rights which the United States might have asserted against the fund. It would hardly be claimed that if the sureties had failed to avail themselves of the privilege of completing the work, they would not be entitled to a credit of the ten percent reserved in, reduction of the excess of cost to the government in completing the work beyond the sum actually paid to the contractor, irrespective of the source from which the contractor had obtained the material and labor which went into the building.
That a stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the consideration, is as much for the indemnity of him who may be guarantor of the performance of the-work, as for him for whom the work is to be performed that it raises an equity in the surety in the fund to be-created; and that a disregard of such stipulation by the voluntary act of the creditor operates to release the sureties, is amply sustained by authority.
The plaintiff, as surety for completing the work under the contract, is subrogated to the rights of the prime contractor and the United States and therefore to the funds created by the retention of the percentages earned by the contractor prior to default. The action of the General Accounting Office in denying the claim for the retained percentages was unwarranted. Whatever claim the Government may have or may have had is subordinate to that of the plaintiff which was subrogated to the rights of both the prime contractor and the Government.
The plaintiff is entitled to recover under the plain terms of the supplemental agreement and also under the doctrine of subrogation. Judgment will be entered for the plaintiff in the sum of $9,197.69. It is so ordered.
Littleton, Judge; and Green, Judge, concur.
Whitaker, Judge, took no part in the decision of this case.